[No. 1736. Decided April 30, 1896.]

G. G. ALLEN, *Appellant*, v. D. S. SWERDFIGER *et ux.*, *Respondents*.

14 461
23 273

APPEAL — REVIEW OF EVIDENCE DE NOVO — EVIDENCE.

The appellate court must examine *de novo* the evidence upon which the decision is based, under Laws 1893, p. 130, in cases tried by the lower court without a jury, and may set aside the findings and conclusions of the court, although there may be some conflict in the testimony.

In an action by the alleged assignee of a note and mortgage to foreclose same, statements of the mortgagee that the mortgagor is indebted to him on a note and mortgage, made in the absence of such assignee, are not admissible in evidence.

Appeal from Superior Court, Snohomish County.— Hon. JOHN C. DENNEY, Judge. Reversed.

*Coleman & Hart*, for appellant.

*Bell & Austin*, for repondents.

The opinion of the court was delivered by

ANDERS, J.—The appellant, plaintiff below, instituted this action to foreclose a real estate mortgage executed and delivered by the respondents on May 28, 1894, to one Jessie M. Johnson, to secure the payment of a promissory note of that date for $400, due sixty days

after date, with interest at five per cent. per month payable monthly.

The complaint, after setting up the execution and delivery of the note and mortgage, alleges that on the 28th day of May, 1894, the said note was, for a valuable consideration, sold, transferred and assigned by said Jessie M. Johnson, by indorsement, to plaintiff who has ever since been, and now is, the owner and holder thereof, and that no part of said note or mortgage has been paid except the interest thereon up to August 28, 1894. The respondents, in their answer admitted the execution and delivery of the note and mortgage, and that no part thereof had been paid except as stated in the complaint, but denied that the plaintiff was the owner thereof, or that the said note was sold and transferred for value to plaintiff, and affirmatively alleged, in substance, that on October 1, 1894, one W. J. Potts commenced an action in the superior court of Snohomish county against the said Jessie M. Johnson and R. Johnson, her husband, and on said day caused a writ of garnishment to be issued and served on the respondents, requiring them to answer upon oath whether they were indebted to, or had in their possession any property belonging to, the said Jessie M. Johnson and Robert Johnson, and that they, on that day, in answer to said writ, stated that they were indebted to said Jessie M. Johnson in the sum of $421.35, upon the promissory note described in the complaint; that said Jessie M. Johnson is, and at all times since the date thereof has been, the owner of said note, and that the same was delivered to plaintiff for the purpose of placing her property beyond the reach of her creditors, and of defrauding, hindering and delaying the said Potts in collecting his said claim against the said Jessie M.

Johnson and R. Johnson, and that the plaintiff received said note with the intention of aiding and assisting them in so doing. The plaintiff in his reply denied the affirmative matter set up in the answer.

Upon the issues thus raised the cause proceeded to trial and the court found, among other things not material to the disposition of this case, that the note described in the complaint was indorsed by the said Jessie M. Johnson and delivered to the plaintiff without consideration, and that the plaintiff at the time of receiving said note knew that said transfer was made by the said Jessie M. Johnson for the purpose of hindering and delaying the said W. J. Potts in the collection of his said claim against the said Jessie M. Johnson and R. Johnson and that at the time said Jessie M. Johnson delivered said note to the said plaintiff as aforesaid, she was, and is now, the holder and owner of said note and mortgage. This finding is properly excepted to and it, therefore, becomes necessary to determine whether or not it was justified by the evidence.

We find by an examination of the record that there is some conflict of testimony on this question, but the cause having been tried by the court without a jury, the evidence upon which the finding of the court was based must, under the appeal act of March 8, 1893, be examined *de novo* by this court; (Laws 1893, p. 130.) And we are constrained to say that a careful examination of the evidence has forced us to a conclusion contrary to that reached by the learned trial court. The plaintiff Allen testified positively that he bought the note and mortgage in question on May 28, 1894, the day they were executed, and paid therefor the full face value, viz., $400; that the note was endorsed by the payee, Mrs. Jessie M. Johnson,

and delivered to him by her husband, Robert Johnson, and that he had ever since kept it with his private papers in the safe of Allen & Zeigler, and that it was never out of his possession except when he delivered it to Mr. Johnson to collect the interest for him each month as it became due, and then return it to him. He also testified that the mortgage was delivered to him as soon as it was recorded and was ever afterwards kept by him with the note in the safe. Both Mr. and Mrs. Johnson also swore positively that the note was sold and delivered to the plaintiff on the day it was dated, and was indorsed by Mrs. Johnson before delivery. Mr. Shattuck, the book-keeper for Allen & Zeigler, also testified that Mr. Allen bought the note on May 28th; that he saw him pay for it, and that it was indorsed by Mrs. Johnson when delivered to him. On the other hand, Mr. Swerdfiger says that Mr. Johnson presented the note to him on four different occasions, and demanded the payment of the interest; that he paid the interest three times; saw the note each time, and saw Mr. Johnson indorse the amount paid on the back of the note, and that at no time did he see Mrs. Johnson's indorsement, but would have seen it had it been there. The interest due September 28th was not paid, although it seems that it was demanded on or about that time by Johnson, who then had the note in his possession. Mr. Swerdfiger also says that Johnson had the mortgage at the same time, but this is denied by Johnson, who states positively that he never had it after it was recorded and delivered to plaintfiff. One Winegard, who heard a portion of the conversation between Johnson and Swerdfiger at that time, testifies that he heard Johnson say that he then had the mortgage with him. Johnson admits, however, that he at that

time told Swerdfiger that plaintiff Allen had no interest in the note and mortgage, and that they belonged to the Johnson family, and he was about to explain why he so stated when he was apparently interrupted by a question propounded by counsel. During that same conversation Mr. Swerdfiger stated to Mr. Johnson that, if he would come to his office on the following Monday with Mrs. Johnson and have her satisfy the mortgage, he would then pay the whole amount due. Mr. and Mrs. Johnson went to see him at the appointed time, but as soon as they reached the court house and before they had entered the auditor's office where they had agreed to meet him, they were informed by the sheriff that Potts had commenced an action against them and garnished Swerdfiger. They immediately left the building and on their way home met the plaintiff who, according to the testimony of himself and the Johnsons, was going to the court house with the mortgage, according to previous arrangement with Johnson, to receive the money. Plaintiff was informed of the garnishment by Johnson, and at once turned around and went to the office of his attorneys and commenced this action to foreclose the mortgage. Several other witnesses testified that Johnson had told them before the commencement of this action that Swerdfiger was indebted to him upon a note and mortgage. It will thus be seen that four witnesses, including appellant, testified that appellant bought the note on the day it was executed, and paid full value for it, and there is no direct testimony to the contrary.

It is claimed, however, that this evidence was overthrown by the testimony of Mr. Swerdfiger that it was not true, as stated by these witnesses, that the indorsement of Mrs. Johnson was on the note on May

28th, or at any time before September 28th, when Johnson asked him to pay the interest then due. Mr. Swerdfiger does not claim to have had the note in his own hands at any of the times when he paid the monthly interest, but he says he saw it and watched Johnson to see him indorse the payments upon it, and that there was no indorsement thereon by Mrs. Johnson and that if it had been so indorsed he would have seen it. Now, Mrs. Johnson's indorsement appears on the opposite end of the paper to that on which the payments of interest are indorsed, and, although it is quite plainly written, it is possible that it was there and was not seen by Mr. Swerdfiger at the times the interest was indorsed thereon. Leaving out of consideration Mr. Johnson's testimony, which it may be conceded for the present was somewhat weakened by his statement to Mr. Swerdfiger as to the ownership of the note and mortgage, and we still have three witnesses who are unimpeached and who state positively that the indorsement was upon the note on the day it was dated.

But it is claimed by the respondents that the original note and mortgage, both of which are in the record, absolutely contradict the statement of appellant and Shattuck, that the mortgage had not been taken out of the safe, and that the note had not been removed more than four times and only for a few hours each time, for, as they say, the mortgage shows that it had been carried on the person of some one, and the note is worn as if it had been doubled up and carried in a pocket book for some time, and had been handled considerably. We fail to see anything in the appearance of the mortgage incompatible with the testimony on behalf of appellant, that it had been kept in the safe ever since it was delivered to appellant. It is

soiled but very little, if at all, and for aught that we can see may have been kept just where appellant and Shattuck say it was kept. The note, it is true, is somewhat worn and evidently has been folded so as to be carried in á small book or wallet, but we cannot say as a matter of fact, that its present appearance could not have been the result of folding and handling during the times the testimony shows it was in the hands of Johnson for the purpose of collecting the interest.

Nor is the fact that Mr. and Mrs. Johnson after they were notified that Mr. Swerdfiger had been garnished did not go into the auditor's office and state to him that they were not the owners of the note and mortgage, sufficient to impeach their testimony, especially as it is corroborated by other evidence. It appears that the mortgage had not been regularly assigned upon the record, and it was therefore thought that it would be necessary for Mrs. Johnson to cancel it of record and both the plaintiff and Johnson testify that Mrs. Johnson went to the court house for that purpose, and not to receive the money which they say belonged to appellant. Neither does it follow that appellant's testimony should be disbelieved because he did not go and inform Swerdfiger, on hearing of the garnishment proceedings, that he was the owner of the note and mortgage and demand payment. If he was the owner of the note he had a perfect right to commence his action without first demanding payment, the note being then overdue; and the fact that the note and mortgage were in his possession and were produced by him upon the trial was itself *prima facie* evidence that he was the owner of them. 2 Rice, Evidence, p. 1124.

We fully agree with counsel for respondents that the

trial court was in a better position than this court now occupies to determine the credibility of witnesses and the weight that should be given to their testimony, and if we were in doubt as to the facts proven we would feel justified in adopting the conclusion of the trial court. But it is our province and duty, under the law, to determine the question under consideration from the evidence in the record, and it appears to us that the overwhelming weight of the proof is in favor of appellant.

We think the court also erred in permitting several witnesses to testify to statements made by Johnson in the absence of appellant, to the effect that Swerdfiger was indebted to him upon a note and mortgage, presumably the same note and mortgage now in suit. It is here claimed that this testimony was offered for the purpose of impeachment, but, if that was the object, a proper foundation for its introduction should have been laid.

The judgment is reversed and the cause remanded with directions to enter a decree of foreclosure in accordance with the prayer of the complaint.

SCOTT and DUNBAR, JJ., concur.

HOYT, C. J., not sitting.