[No. 33460. *En Banc.* April 4, 1957.]

DAN LE MASTER, *Appellant,* v. EARL B. CHANDLER *et al.,*
*Respondent.*[1]

*Ned W. Kimball,* for appellant.

*Hensel & Hensel,* for respondent.

WEAVER, J.—Plaintiff appeals from a judgment dismissing his action for damages to personal property.

Defendants are the owners and operators of a public ferry across the Columbia river at Orondo, Washington. The ferry boat is 65 feet long and has a beam of 22 feet. It

[1]Reported in 309 P. (2d) 384.

has an 8½ foot apron on each end, protected by a ⅜ inch barrier chain that is hooked in position when the ferry is in motion. The ferry deck is 6 inches higher in the center than it is at either end. The boat is equipped with wooden scotches 4 by 6 by 14 inches, used to block the wheels of a vehicle after it has been parked on the ferry boat. The ferry carries no signs bearing instructions to drivers of vehicles.

On the day of the accident, plaintiff's employee drove a truck loaded with apples onto defendants' ferry for transportation across the river. He parked it where one of the defendants instructed him to stop. No further instructions were given the driver. The rear of the truck was approximately 25 feet from the stern of the ferry. The driver remained in the cab of the truck. The defendant in charge of the ferry did not block the truck wheels with the scotches carried for that purpose.

Just before the ferry landed on the opposite side of the river, the truck, with the driver still in the cab, rolled backward through the barrier chain off the ferry, and into the river.

Upon conflicting evidence, the trial court found that plaintiff's driver

" . . . negligently, carelessly and with lack of proper attention, failed to have the brake, or brakes, of the truck properly set, or failed to have the truck in gear . . ."

Based on these facts, the trial court concluded that defendants were negligent in failing to use blocks under the wheels of the truck; and that the barrier chain, which the truck broke as it went backward, was a sufficient safety device for the practical operation of the ferry.

The trial court concluded

"[A] That, however, the said accident and the alleged damages to the truck and apples of plaintiff were not caused proximately by the failure of the defendants to block the wheels of said truck, but [B] were directly caused by the plaintiff and his driver's failure to properly set the brakes or put said truck in gear and other wise properly control the said truck, and the plaintiff contributed to the damages complained of." (Lettering supplied.)

We direct our attention to the court's first conclusion ("A" *supra*) that the damages to the truck "were not *caused proximately* by the failure of the defendants to block" its wheels. (Italics ours.) This conclusion is based on one of two premises: (1) defendants' obligation as common carrier does not encompass possible damages which may flow from their failure to block the wheels; or (2) defendants were not negligent when they failed to block the wheels of the truck when it came to rest on the ferry boat.

There is no appeal from the conclusion of the trial court that defendants were negligent in failing to provide and use blocks under the wheels of the truck; hence, we consider only the first premise.

In the operation of the ferry boat, defendants are common carriers. They are charged with such high degree of care that is consistent with the practical operation of their business for the safety of persons and property transported by them. *McLain v. Easley,* 146 Wash. 377, 381, 262 Pac. 975, 264 Pac. 714 (1928).

They are responsible for the happening of any occurrence springing from their negligent act; they are liable for damages resulting from events which they could have foreseen, or for those which are normal incidents of the risk they created.

Among the duties cast upon defendants, as common carriers, is that of anticipating that a motor vehicle, driven upon their ferry, may have defective brakes; may be left unattended with brakes improperly set; may not be in gear; may be in the control of an inattentive driver; or may, in other respects, be improperly parked. It is apparent that such a vehicle may be put in motion to its peril (or that of others) by a bump from another vehicle (see *McLain v. Easley, supra*), by a lurch of the ferry, by the condition of the water, or by the existence of any of the conditions we have enumerated. It was the duty of defendants to block the wheels of plaintiff's truck as soon as practical operation of the ferry would permit; and in their failure so to do, they were negligent. Failure of plaintiff's driver to set the brakes and put the truck in gear (as found by the trial court) is a

significant part of the hazard, and it was the duty of defendants to protect plaintiff against the dangers of these very conditions. They are charged with knowledge that automobiles may not be under adequate control as they come to rest on the ferry.

■ Once it is determined that defendants' primary duty requires them to guard and protect plaintiff against that which actually came to pass, it follows that the result is within the scope of defendants' negligence. That which happened was reasonably within the realm of that which defendants should have anticipated.

■ The question before us is one of the *extent* of the responsibility which the policy of the law imposes upon common carriers. Is a line drawn by the facts of this case which terminates defendants' liability for their negligent act in failing to block the wheels of plaintiff's truck? We think not; thus, we disagree with the trial court's second conclusion—that plaintiff's damages resulted from the negligence of his driver—as well as with the first—that defendants' negligence was not the proximate cause of the accident.

Almost the identical situation was presented to the supreme court of Virginia in *Chesapeake Ferry Co. v. Cummings*, 158 Va. 33, 164 S. E. 281, 82 A. L. R. 790 (1932). Plaintiff's intestate, Mr. Cummings, drove his car onto the ferry and stopped it within a few feet of a chain barrier. The car was not blocked. Instead, a deck hand motioned Mr. Cummings forward. The car proceeded through the chain barrier and into the water. The sole issue was whether Mr. Cummings was chargeable with contributory negligence and, if so, whether such negligence concurred with the negligence of the defendant in causing his death.

The court pointed out that the jury concluded that the defendant ferry company had either failed to provide proper barriers and appliances, or had failed to use those provided. In the instant case, the court found defendants negligent in failing to block the wheels of the truck.

Of this, the supreme court of Virginia said:

"The previous negligence of the defendant had thus incapacitated it from avoiding the consequence of the act of the plaintiff's intestate, which it was its duty to have anticipated. The defendant owes an abstract duty to provide the proper safeguards to prevent cars from going overboard. Upon an emergency arising, the abstract duty becomes a concrete duty, in this case specifically owing to the plaintiff's intestate. Had the abstract duty been performed by having available and in place the proper safequards, no injury would have resulted from the act of the plaintiff's intestate. The jury having found the defendant negligent in this particular, this negligence was the sole proximate cause of the death of the plaintiff's intestate. This principle finds support in the following cases:

" ' "The negligence that produced such a state of disability is not merely part of the inducing causes—a remote cause or a cause merely *sine qua non*—it is, in very truth, the efficient, the proximate, the decisive cause of the incapacity, and therefore of the mischief. . . . Negligence of a defendant incapacitating him from taking due care to avoid the consequences of the plaintiff's negligence, may, in some cases, though anterior in point of time to the plaintiff's negligence, constitute 'ultimate' negligence, rendering the defendant liable notwithstanding a finding of contributory negligence of the plaintiff. . . ."

" ' "The principle that the contributory negligence of a plaintiff will not disentitle him to recover damages if the defendant, by the exercise of care might have avoided the result of that negligence, applies where the defendant, although not committing any negligent act subsequently to the plaintiff's negligence, has incapacitated himself by his previous negligence from exercising such care as would have avoided the result of plaintiff's negligence.' *British Columbia Electric Railway v. Loach* (1916), 1 A. C. 719."

Under the conditions of this case, the failure of plaintiff's driver to set the brakes, put the truck in gear, or stop it as it rolled backward—it was the duty of defendants to guard him against the dangers of the very condition—do not bar recovery for defendants' negligence. To hold that the acts of the driver were the proximate cause of the damage, is to hold that vehicle operators have the burden of keeping their vehicles on the ferry. This would detract from the duty which the law casts upon common carriers.

The judgment of dismissal is reversed and a new trial granted, limited to proof of plaintiff's damage.

HILL, C. J., SCHWELLENBACH, DONWORTH, ROSELLINI, and OTT, JJ., concur.

MALLERY and FINLEY, JJ., dissent.

FOSTER, J. (dissenting)—I dissent because of the court's failure to heed the admonition of the United States supreme court in *Carlisle Packing Co. v. Sandanger*, 259 U. S. 255, 66 L. Ed. 927, 42 S. Ct. 475, that the common law cannot be applied to a maritime tort.[2]

The accident in question occurred aboard a vessel navigating the Columbia river, a navigable water of the United States.[3] Articles III, § 2, of the Federal constitution extends the judicial power of the United States "to all cases of admiralty and maritime jurisdiction" and but for the saving clause,[4] jurisdiction in this case would be exclusively in the United States district court,[5] and this is not dependent upon interstate or foreign commerce.[6]

The complete bar of the common-law doctrine of contributory negligence is hostile to every concept of the maritime law,[7] but contributory negligence may diminish the amount of recovery as justice may require. The many cases of purely local concern, which do not impair the uniformity at which the constitution aims in admiralty matters, were reviewed in *Davis v. Department of Labor & Industries*, 317 U. S. 249, 87 L. Ed. 246, 63 S. Ct. 225, but this case deals directly with navigation and commerce and is not of purely

---

[2]112 Wash. 480, 192 Pac. 1005.

[3]Opinions of the Attorney General, 1929-30, p. 254-258.

[4]28 U. S. C. A. 575, § 1333 (1).

[5]See article entitled "Uniform Maritime Law in 'Saving Clause' Cases," 34 Boston University Law Review 365.

[6]*London Guarantee & Accident Co. v. Industrial Accident Commission of California*, 279 U. S. 109, 73 L. Ed. 632, 49 S. Ct. 296; Robinson on Admiralty 34, § 7.

[7]*Pope & Talbot, Inc. v. Hawn*, 346 U. S. 406, 98 L. Ed. 143, 74 S. Ct. 202; *Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U. S. 310, 99 L. Ed. 337, 75 S. Ct. 368.

local concern. *Northern Coal & Dock Co. v. Strand*, 278 U. S. 142, 73 L. Ed. 232, 49 S. Ct. 88.[8]

Prior to January 2, 1951, the effective date of Superior Court Rule 17, 34A Wn. (2d) 118, and related Rules on Appeal, this court on appeal was required by Rem. Rev. Stat. § 1736 (*cf.* RCW 4.88.180)[9] to retry any factual dispute tried below to the court without a jury; but that statute was completely abrogated by Rule on Appeal 65, 34A Wn. (2d) (Sup. No. 6) 20, as amended, effective January 3, 1956, so that this court's jurisdiction is now purely appellate. The retrial of factual disputes here will swell the volume of appealed cases to the point of frustrating the true appellate function.

I would remand the case with instructions to decide it on the admiralty law.

---

[8] For an analysis of the "local concern doctrine" see Robinson on Admiralty 101, § 14.

[9] *Allen v. Swerdfiger*, 14 Wash. 461, 44 Pac. 894.