THE INDEPENDENCE MILLS CO. v. THE BURLINGTON, CEDAR RAPIDS & NORTHERN R'Y CO. ET AL.

1. **Railroads**: WHEAT DESTROYED ON TRACK: NATURE OF LIABILITY: INSTRUCTIONS. In an action against railroad companies for the value of wheat carried by them and destroyed on track by fire after reaching its destination, the defendants complained that the court in its instructions held them to strict liability as common carriers, and took from the jury all questions as to their liability as warehousemen. But *held* that there was no error in this, because the court plainly instructed the jury that, if the car was put in a proper place for unloading, there was no liability on any ground.

2. ————: AS CARRIERS OF WHEAT: WHEN DUTY OF CARRIER CEASES. The duty and liability of a railroad company as a carrier of wheat in bulk, not designed to be placed in the company's warehouse, does not cease until it has placed the car containing the wheat in such a position at the place of destination that it can safely, and with a reasonable degree of convenience, be unloaded by the consignee. The car of wheat involved in this case having been placed where it could possibly be unloaded, but not with convenience, and having been destroyed by fire while in such place, *held* that the transporting companies were liable as carriers to the owners of the wheat.

3. ————: ————: LOSS BY FIRE: PLEADING: CARRIERS JOINTLY LIABLE. A contract was made with one of the railroad companies defendant for the shipment of a car of wheat by way of its line and another designated road, but, in violation of the contract, it was shipped by the road of the other defendant herein, and by it hauled to its destination, where it was burned while yet in the hands of the carriers. The petition averred, along with the other facts in the case, that the wheat was lost or destroyed while in possession of the last carrier, and the evidence justified the conclusion that the defendants were jointly interested in the contract of shipment. *Held* that the pleadings and evidence warranted a judgment against both defendants.

4. **Pleading**: INDEFINITE STATEMENT OF DAMAGES: DEFECT WAIVED. In an action against a carrier for wheat destroyed, where the value of the wheat and the damage to plaintiff could fairly be inferred from the allegations of the petition, but such value and damage were not alleged in terms, *held*, in the absence of a motion for a more specific statement, that the petition was sufficient in these respects to support a verdict and judgment for plaintiff.

*Appeal from Buchanan District Court.*

TUESDAY, OCTOBER 11.

ACTION at law to recover the value of a car-load of wheat

which was destroyed by fire on one of the tracks of the Burlington, Cedar Rapids & Northern Railroad Company at the city of Independence, in this state. There was a trial by jury, and a verdict and judgment for the plaintiff. Defendants appeal.

*S. K. Tracy*, for Burlington, C. R. & N. R'y Co., appellant.

*C. E. Ransier*, for Minneapolis & St. L. R'y Co., appellant.

*Lake & Harmon* and *Woodward & Cook*, for appellee.

ROTHROCK, J.—I. On the 29th day of August, 1885, Peavy & Co., of Minneapolis, Minnesota, shipped from that place to plaintiff, at Independence, Iowa, a carload of wheat in bulk. The wheat was ordered by the plaintiff to be shipped by way of the Minnesota & Northwestern Railroad, in care of the Illinois Central Railway, and the bill of lading issued by the Minneapolis & St. Louis Railway Company provided for a shipment by that route. The Minneapolis & St. Louis Railway Company did not follow such directions, but transported the car to Albert Lea, Minnesota, and there turned it over to the Burlington, Cedar Rapids & Northern Railway Company, to be hauled by it to Independence. The grain arrived at Independence on the 8th day of September, 1885, and the car was not moved to the Illinois Central depot, where it would have been placed if the shipping order and the provisions of the bill of lading had been observed, but it was placed upon a side track of the Burlington, Cedar Rapids & Northern Company, and remained there for a time, and was hauled to another place near an elevator, and on the night of September 10, 1885, it was destroyed by the burning of the elevator, over which neither company had any control, and the burning of which was without the fault of either defendant.

*(margin note: 1. RAILROADS: wheat destroyed on track: nature of liability: instructions.)*

Thus far there is no dispute in the facts of the case. The petition seeks to recover of the defendants for negligence as common carriers, and not as warehousemen. It recites the facts as to the requirement that the shipment should be by the Minnesota & Northwestern and Illinois Central roads, and that the wheat was not delivered at the depot of the Illinois Central road at Independence, according to the contract of shipment. It appears, however, that the plaintiff had notice of the arrival of the car at the depot of the Burlington, Cedar Rapids & Northern Railroad Company at Independence, and, as nearly all of the evidence in the case was directed to the question whether the car was placed in such a position that it could be conveniently and safely unloaded by the plaintiff, the court in its instructions to the jury held, in effect, that all questions were out of the case excepting one, which was whether, under the evidence, the responsibility of a common carrier had ceased, and that of a warehouseman begun, before the wheat was destroyed. The jury were advised, in effect, that if the car was put in a suitable place to be unloaded, and the transportation of it was completed when it was destroyed by fire, the defendants were not liable. The instructions referred to are as follows:

" (5) You are instructed that it was the duty of the railroad companies, defendants, as common carriers, to place the car at Independence where it could be unloaded without a greater expense or risk than is usually incident to the unloading of cars containing like freight at said place, or to place said car at Independence in a position where a reasonable and prudent man, knowing the custom and rules governing the handling of freight at said station, and diligent in removing his property from the railroad, would not decline to receive it ; and if you find that at any time after the car of wheat reached Independence, on September 8, 1885, it was placed so that the defendants complied with the rule of law laid down in this instruction, then the defendants are not liable in this action, and you will so find.

"(6) The evidence tends to show that, when the car of wheat first arrived, the drayman, Marquette, who usually hauled like freight for the plaintiffs, complained of .the position in which the company had left the car, and that the car containing the wheat was subsequently moved from the position complained of to another position. Now, if you find that, subsequent to the first complaint and removal, the plaintiffs, or their agents or employes, did not complain, previous to the fire, to the agents of the defendants, that the car was in a position where it could not be unloaded without unusual expense, then the agents of the company were justified in assuming that no fault was found with the position of the car, and the defendants would not be liable, and you should so find.

"(7.) The burden of proof is on the defendants to show, by a fair preponderance of credible evidence, that the car of wheat was placed at Independence, after its arrival and before the fire, in a place where cars containing like freight are usually placed ; or that it was placed, after its said arrival and before the fire, in a position where a reasonable and prudent man, in the exercise of due diligence in removing his property from its exposed condition, and knowing the rules and custom of handling and delivering like freight at said station, would not decline to remove it. But if you find that the agents or employes of the plaintiff did not complain a second time, as stated in the last instruction, subsequent to the, removal after the first complaint, you are instructed that the law presumes that the plaintiff waived any objections it might have had to the second or any subsequent position to which the car was removed after the first complaint.

"(8) You will not consider any issue made by the pleadings in this action not submitted to you by these instructions. The other issues in the case are withdrawn from your consideration."

It will thus be seen that the court eliminated all questions from the case excepting that of liability of common carriers.

The defendants complain because the court held them to the strict liability of common carriers, and did not submit to the jury the question as to liability as warehousemen. We think there was no error in this, because the court plainly instructed the jury that, if the car was put in a proper place for unloading, there was no liability on any ground, either as carrier or warehouseman.

II. We come now to what we regard as the main question in the case. It is this: Was the jury warranted in

2. ——: as carriers of wheat: when duty of carrier ceases. finding, from the evidence, that the transportation of the wheat was ended when it was destroyed by fire?

It has been held by this court, and must be regarded as the settled law of this state, that the liability of a railway company as a common carrier of freight terminates, and its responsibility as a warehouseman commences, upon the arrival of the goods at the point of destination, and depositing them in the warehouse of the company to await the convenience of the consignee. *Francis v. Dubuque & S. C. R'y Co.*, 25 Iowa, 61; *Mohr v. Chicago & N. W. R'y Co.*, 40 Id., 579. The principle upon which these cases were determined is that, when a common carrier has transported the property to its destination, and done all of the acts pertaining to the carriage of the goods, his liability as such carrier ceases. There can, however, be no uniform rule as to what acts are necessary to be done to fulfill the carrier's contract. His duties must vary according to the nature of the consignment. In the cited cases the property was such that it could be removed from the cars and placed in an ordinary depot warehouse. But in the case at bar the grain was in bulk. It was not expected by the parties that it would be removed from the car by the railroad company and carried into its warehouse. It was its duty to place it in such a position on its track that it could be safely, and with a reasonable degree of convenience, unloaded by the plaintiff; and it was the right of the plaintiff to refuse to unload the car until it was

so placed; and as long as the defendant, in obedience to its obligation as a common carrier, was required to move the car upon the track, its liability as such common carrier did not cease.

The jury were fully warranted in finding that when the car arrived at Independence it was placed upon a track where it was unsafe and inconvenient to unload, and that, when requested to move it elsewhere, a removal was made, and the car was placed upon scales adjoining the elevator which was burned, so that it could not be unloaded on one side because of the elevator, and could with difficulty have been unloaded from the other side because of the scale beam and its attachments, and that plaintiff's servants again complained of the location of the car.

The defendants' counsel claim that the jury found specially that the car was on the side track at a convenient point for unloading into wagons long before the fire. The following among other special interrogatories were submitted to the jury: "(1) Was the car of wheat in question placed where it could be safely unloaded, on the day it arrived at Independence station? Answer. No. (2) Was it placed where it could be got at to unload it when the car was moved from the place where it was first left? A. Yes. (3) Did the scale frame interfere with the unloading of the car? A. Yes." The claim of counsel is based upon the answer to the second interrogatory. But that answer must be taken in connection with the answer to the third interrogatory, and when taken together the jury answered, in effect, that as a physical fact the car could have been unloaded, but that the scale frame would have interfered with the work of unloading.

III. It is claimed that the plaintiff ought not to have been allowed to recover, because the right of recovery as set forth in the petition is based upon the violation of the contract to make the shipment by way of the Illinois Central Railroad. We think that, as the petition avers that the wheat was lost or destroyed while

3. ——: ——: loss by fire: pleading: carriers jointly liable.

in the possession of the Burlington, Cedar Rapids & Northern Railroad Company, and before delivery, the averments thereof are sufficient to support the action; and we are of the opinion that the evidence was sufficient to authorize a finding that the defendants were jointly interested in the contract of shipment sued upon.

IV.   Lastly, it is claimed that no recovery ought to have been had because the petition neither alleges that plaintiff

**4. PLEADING:** **indefinite statement of damages: defect waived.** was damaged in any sum, nor that the wheat was of any value.   The petition claims of the defendants $600 as justly due from them to the plaintiff.   It gives the number of bushels of wheat which were destroyed, and avers a demand for the wheat, or payment for the same; avers that the claim is the property of the plaintiff; and demands judgment for $600, interest and costs.   It is true, the petition did not aver in terms the value of the wheat; but, in the absence of a motion for a more specific statement, we think it was sufficient.

AFFIRMED.