[No. 14366. Department One. February 1, 1918.]

HENRY LAGOMARSINO, *Respondent*, v. PACIFIC ALASKA NAVIGATION COMPANY, *Appellant*.[1]

CARRIERS—LOSS OF GOODS—LIABILITY. Where cargo unloaded upon a dock was so congested that the shipper was unable to move it on the following day and a fire burned the dock before it could be removed, the relation of carrier was not shifted to that of warehouseman, and the carrier was liable regardless of negligence.

SAME—LOSS OF GOODS—EVIDENCE—QUESTION FOR JURY. Upon an issue as to whether cargo unloaded upon a dock was so congested that it could not be removed before a fire burned the dock, utterly conflicting testimony as fully establishing the location at one point as at another makes it a question for the jury.

NEW TRIAL—VERDICT—EXCESSIVENESS. A new trial will not be granted for excessive damages for the loss of goods, where the verdict was reduced by the trial judge to the lowest value shown by the evidence.

EVIDENCE—CONCLUSION OF WITNESSES. Evidence that a witness did not remove goods from a dock "because he could not get at

[1]Reported in 170 Pac. 368.

them" is not objectionable as a conclusion of the witness, where he detailed all the facts and the jury could draw its own conclusion as to whether they were capable of being removed.

CARRIERS—LOSS OF GOODS—MEASURE OF DAMAGES. Giving the measure of damages for the loss of goods by a carrier as the value at the place of shipment plus the freight paid, is more favorable to the shipper than to the carrier, who cannot complain thereof.

SAME — LOSS OF GOODS — CONTRIBUTORY NEGLIGENCE. Reasonable time for the removal of goods placed by a carrier upon a dock in such congestion that it could not be got at, is not a question of hours, but of opportunity afforded.

SAME—LOSS OF GOODS—INSTRUCTIONS. Upon an issue as to a carrier's liability for loss of goods through the burning of a dock before delivery was made, whether the carrier contributed in any manner to the burning of the dock is immaterial as a defense.

SAME. In an action against a carrier for the loss of goods before delivery, so congested upon a dock that they could not be removed before a fire, it is proper to refuse a requested instruction that it was not the carrier's duty to safeguard the goods, where proper instructions were given as to the issue made whether they were accessible and a reasonable time elapsed for their removal.

STATUTES—FOREIGN STATUTES—PLEADING. A foreign statute must be pleaded and proved in order to be available as a defense.

SHIPPING — STATUTES — EXTRATERRITORIAL EFFECT. Statutes of a sister state exempting marine carriers from loss caused by fires can be given no extraterritorial effect so as to affect loss by fire in this state.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered March 20, 1917, upon the verdict of a jury rendered in favor of the plaintiff, in an action to recover from a carrier for the loss of goods. Affirmed.

*Jones & Riddell,* for appellant.
*E. L. Rinehart,* for respondent.

FULLERTON, J. — The Santa Rosa Wine Company shipped from San Francisco to Seattle, by a steamer of the appellant company, 4,090 gallons of wine. The shipment arrived in Seattle on the morning of July 28,

1914, and was unloaded on the company's dock on the same day. Shortly after the arrival of the vessel, the agent of the consignor appeared at the dock, paid the freight bill in the sum of $108.99, and, on the same day, removed 1,124 gallons of the wine. The remainder of the wine, 2,966 gallons, was lost in the partial destruction of the dock by fire on the afternoon of July 30, 1914. There was no showing that the fire was due to any negligence on the part of the carrier. The claim for the lost wine was assigned to the respondent, who brought an action for its loss, claiming that the liability of the appellant as a carrier still attached to the freight for the reason that the unremoved wine was so surrounded and covered with other freight that it was impossible to remove it. The cause was tried to a jury, which rendered a verdict for respondent in the sum of $1,592.09, which was reduced by the court on motion for new trial to the sum of $1,200, and judgment rendered accordingly.

The main question on this appeal is one of fact; that is, whether respondent had an opportunity to remove, and should have removed, the wine before the fire. If he had, then the liability of the appellant would be shifted from that of a carrier to that of a warehouseman, rendering it responsible only in case the fire was the result of its own negligence. The evidence shows that the dock was destroyed by fire more than forty-eight hours after the cargo had been unloaded from the vessel. It appears that the wine had been stowed partly in the after hold and partly in the forward hold of the vessel, and thus had been discharged at two points on the dock. The wine from the after hold was removed by the respondent on the day the vessel unloaded. On the following day, he sent teamsters to haul the remainder of the wine, but they testified they were unable to get at it owing to the congestion of

freight around it. This testimony as to the congested condition around the wine is corroborated by that of another consignee whose freight was in the same vicinity. There is a sharp conflict as to the location of this wine, respondent's witnesses locating it on the north side of the dock, while appellants are as certain that it was on the south side of the dock, their testimony being substantiated to the extent that, some time after the fire, they emptied into the bay wine bearing respondent's marks, on the south side of the dock. But appellant's witnesses testified that, on the morning of the day of the destructive fire, there had been another minor fire which they had extinguished, and that, for the purpose of flooding the dock, they had shifted the freight to some extent. So it appears that the testimony as to location might, in fact, be true as claimed by each party, but that the difference in place related also to a difference in time. Another fact to be taken into consideration is that the respondent's employees who went to the dock after specific freight were better cognizant of its exact location than were the employees of the appellant who, two years after the loss, were testifying to their general knowledge of how the whole cargo of miscellaneous freight was discharged upon the dock.

The appellant strenuously contends that the witnesses of respondent are contradicted by the physical facts, the assumption being that, inasmuch as the evidence shows the wine was on the south side of the dock, away from the bulk of the freight which the steamer had discharged on the north side along which it lay, the testimony as to its being surrounded by other heavy freight on the north side was necessarily false. To this is added the showing that the linoleum, said to surround the wine, was removed after the fire in fairly good condition, while the respondent testified his wine,

located in the same place, was destroyed. But what the appellant calls a physical fact does not logically exist. The evidence was utterly conflicting as to the location of the wine at the time the respondent attempted to remove it. It was as fully established at one point by respondent's witnesses as it was at another point by appellant's witnesses. In such a case, its location could not be an accepted fact, but would be one for the jury to determine from the weight and credibility of the evidence. We think there was no error in denying appellant's motions for a directed verdict and for judgment notwithstanding the verdict.

The appellant contends that it was entitled to a new trial on account of the excessiveness of the verdict. The only evidence as to the value of the wine was that of the respondent. His claim, presented to the appellant shortly after the fire, was for $1,021.58, covering the value of the wine at twenty-eight cents per gallon and the value of the containers. On a previous trial, he placed the value of the wine at forty-two cents per gallon, which would amount to $1,245.72, which, with the cooperage at $191.10, totaled the sum of $1,436.82. On the present trial, respondent testified the value of the wine at Seattle was at least fifty cents per gallon, which, with the value of the cooperage, would equal $1,674.10. The freight paid to the respondent for the wine was $108.99. The verdict of the jury was for $1,592.09, which it will be noted substantially equals the value of the wine and the freight paid, which, less the cooperage, would total $1,591.99. On a motion for a new trial on the ground of excessiveness of the verdict, the court announced it would grant a new trial unless the respondent would accept $1,200, which was done. This was substantially a reduction of the verdict to the lowest value of the wine in evidence, $1,021.58, with the added freight paid, $108.99, which

would total $1,230.57. The appellant has no justifiable complaint as to the amount of the judgment, since the evidence would sustain a heavier one. The smaller claim was presented immediately after the fire for the purpose of obtaining the money on an early adjustment, and was probably the value of the wine at the place of shipment. The later testimony as to value shows that it was based on the Seattle market.

The objection raised by appellant that the testimony of certain witnesses as to the congested condition of the freight on the dock and appellant's inability to get at his shipment stated merely conclusions of the witnesses and was, therefore, inadmissible, is not well taken. Their testimony, as adduced after admonitions of the court to tell the conditions, was addressed to showing the character of the freight surrounding the wine shipment. After showing such conditions, it was not erroneous to allow a witness to testify he did not take the wine away because he "could not get at it," since the jury had the facts upon which to draw their own conclusion as to whether the wine was capable of being removed.

Contention is made that the court erred in fixing the measure of damages for the loss as the value of the shipment at destination plus the freight paid. The general rule is that the freight charges should be deducted from the value of the goods at the time and place of delivery, if such charges are due and unpaid, but it is incumbent on the carrier to plead and prove them by way of set-off or counterclaim. Moore, Carriers (2 ed.), pp. 581, 590. Where the freight charges have been paid, their recovery is one of the elements of damages, even where damages are allowed on the market value of the goods at the place of destination. 10 C. J. 395, 403. The judgment herein was apparently based on the value of the wine at place of shipment,

plus the freight paid, and thus was more prejudicial to respondent than to appellant. There was no error in the admission of evidence as to the freight paid, nor in the court's instructions as to the measure of damages.

The appellant contends that the court erred in giving its instruction upon the question of reasonable time and opportunity to remove the shipment of wine whereby the carrier would be exonerated, and in refusing the respondent's requested instruction thereon. The charge of the court was a proper statement of the law on that question as addressed to the facts in evidence. The request was that the court should go further and declare:

"Consequently, so far as the element of time is concerned, sufficient time had elapsed after plaintiff knew the property was on the wharf for the same to have been delivered to him. I charge you, therefore, that a reasonable time for plaintiff to have accepted delivery of these goods had expired before the destruction of the dock by fire."

The vice of this request is that it asks the court to assume, as a matter of law, what was one of the vital contested issues in the case. Reasonable time in this case was not a question of hours, but was one to be measured by the opportunity afforded, which was for the jury to determine under the evidence.

Error is assigned on the refusal of the court to instruct as requested that "There is no evidence that the defendant in any way contributed to the cause of the dock fire." The refusal was proper, inasmuch as the issue was whether the appellant was liable not as a warehouseman, but as a carrier for loss occurring before proper delivery had been made.

Error is assigned on the refusal of the court to give the following requested charge:

"You are instructed that it was not incumbent on the defendant to have a separate place on its dock for

each kind or class of freight. It need only have a reasonably proper, safe, secure, and accessible dock space for its business as customarily performed in regular course."

The charge of the court as given upon this issue was as follows:

"The court instructs the jury that, although they believe from the evidence that the defendant company safely transported the wine in question and safely landed it upon the wharf in Seattle, yet the defendant company would nevertheless be liable unless the jury further find, from a fair preponderance of the evidence, that the said wine was separated by the defendant from other shipments, if any, and placed in a position so as to be conveniently accessible to plaintiff for removal by him, and a reasonable time allowed for the removal of the wine from the dock; and if the jury find, from the evidence, that these conditions were not complied with by the defendant company, and that the wine was lost or destroyed in the meantime, then your verdict should be for the plaintiff in such sum as the jury find to have been the fair market value of the wine at the time in question."

The requested instruction was fully covered by the one given, which we believe was a proper statement of the law applicable under the evidence. *The Titania*, 131 Fed. 229; *Derosia v. Winona & St. Peter R. Co.*, 18 Minn. 133; *Independence Mills Co. v. Burlington, C. R. & N. R. Co.*, 72 Iowa 535, 34 N. W. 320, 2 Am. St. 258; *Fisher v. Northern Pac. R. Co.*, 49 Wash. 258, 94 Pac. 1073, 126 Am. St. 867.

The final contention is that the shipment originated in California; that the contract of carriage is, therefore, a California contract and governed by the laws of that state (Civil Code, §§ 2086, 2087, 2197) which exempt a marine carrier from loss or injury "caused by the perils of the sea or fire," in addition to other exemptions allowed such carriers. It is sufficient to say

that, conceding the applicability of a foreign statute to the right of action in this state, such statute was not pleaded or proved. But, even if pleaded, it could have no extraterritorial effect and could not be given force in our courts for the reason that the loss occurred at the point of destination, a point without the jurisdiction of California.

The judgment is affirmed.

ELLIS, C. J., PARKER, MAIN, and WEBSTER, JJ., concur.