[No. 27471. Department Two. June 15, 1939.]

JOHN A. BOBST, *Appellant*, v. FRED HARDISTY, *Respondent.*[1]

[1]Reported in 91 P. (2d) 567.

*Wilkinson & Langsdorf,* for appellant.

*McMullen & Snider,* for respondent.

GERAGHTY, J.—The plaintiff was struck by an automobile driven by the defendant, and instituted this action to recover damages for injuries sustained. Trial of the cause to a jury resulted in a verdict for the defendant. After denial of a motion interposed by the plaintiff for judgment notwithstanding the verdict or, in the alternative, for new trial, judgment was entered on the verdict. The plaintiff appeals from the judgment "and from the order . . . denying a motion for judgment notwithstanding the verdict . . . ."

The respondent moves to strike appellant's brief and dismiss his appeal, for the reason that the brief contains no assignments of error, as required by the rules of this court.

Appellant's opening brief does not set out a formal assignment of error, captioned as such. He begins his argument, however, by stating that his contention is that the court erred in failing to grant his motion for judgment notwithstanding the verdict. While informal, we are disposed to treat this statement as in substantial compliance with the rule.

The respondent also questions the power of the trial court to grant the motion, in any event, in an action for personal injuries where the damages are unliquidated.

The trial court may enter judgment notwithstanding the verdict, in favor of either party, where it is warranted by the undisputed evidence. *Roe v. Standard Furniture Co.,* 41 Wash. 546, 83 Pac. 1109; *Fishburne v. Robinson,* 49 Wash. 271, 95 Pac. 80.

In the case last cited, in an action on a promissory note, the jury returned a verdict in favor of the defendant. The trial court being satisfied, as a matter of law, that the defendant's evidence did not constitute a defense to the note, and the amount due being liquidated, granted the motion for judgment notwithstanding the verdict.

In the present case, assuming the trial court could have found that, as a matter of law, the respondent was guilty of negligence and the appellant free of contributory negligence, there would still remain to be determined by a jury the amount to be awarded as damages. But, passing the technical objection, we are satisfied from our examination of the evidence that the trial court was fully justified in denying the motion on the merits.

■ The accident occurred at or near the southwest corner of Main and west Twenty-fourth streets, in the city of Vancouver, about six o'clock in the evening, January 29, 1938. Main, a north and south street, has two traffic lanes and a parking lane on each side of a center line. West Twenty-fourth enters Main street from the west, but does not extend eastward beyond that street.

At the time of the accident, a car, referred to as the Wilcox car, was parked, facing south, on the west side of Main street, in front of a corner drugstore conducted by Mr. Ghormley. The rear of the Wilcox car was just off the unmarked pedestrian crossing. A second car was parked south of the Wilcox car, the space between them being about twenty inches. This space was opposite the entrance to the Ghormley drugstore.

The appellant, a farmer occupying a stall in a public market some blocks south of the place of the accident, testified that he left his stall about six o'clock and drove north on Main street to west Twenty-fourth. He

parked his car along the east curb and close to the south line of the cross-walk. He had a paper bag containing some eggs, in cartons, for delivery to Mr. Ghormley at the drugstore. He testified further:

"Q. After you had parked your car, Mr. Bobst, what did you do? A. Well, the first thing I did, I looked across the street, to see if Ghormley was busy, because I did not like to go in there with my eggs if he was real busy. I noticed a car standing directly in front of his store. Then, a man was apparently getting in or getting out. . . . Q. Then that was before you got out of the car? A. That was before I got out of the car. Then, before I got out of the car, I looked to the south to see that no traffic was coming so I could open my door outward. I got out of the car; there was no one coming; and I opened the back door of my car and took the eggs out that I was to deliver to Ghormley. . . . Q. Then, what did you do when you got out the eggs? A. Well, I closed the back door and walked to the head of my car which was practically in line with the sidewalk across the street, that is, the head of my car was. . . . I then hesitated a moment and looked to the south to make sure that I could get across the street. . . . and I passed over then to the center of the street. In the center of the street, I looked to the north to observe if anyone was coming anywhere near me. I observed no cars that . . . would injure me, and I passed on over the next zone into the fourth zone. . . . During my entry into the fourth zone, or just before I reached the car, I don't know which, I heard the roar of a motor which I figured was the car that I saw the man at. As I approached the car closer, I noticed—I turned my head just enough to see where I was at, and at the same time I turned my head right back again and this car that struck me was on me. It was coming so fast I just couldn't move, that is all."

On cross-examination, appellant testified:

"Q. You claim as you crossed the center line of Main street, going in a westerly direction, that you looked to the right, which would be north up Main

street, is that right? A. Yes, sir. Q. Did you see Mr. Hardisty's car coming? A. I did not. Q. How many times after you started to cross Main street did you look to your right? A. My head was held looking to the right all the way across from the center line on over to the west side. Q. And, still, you did not see Mr. Hardisty's car? A. No, sir. . . . Q. Did Mr. Hardisty come from the north or from the south? A. He seemed to come from nowhere, as far as I can figure. . . . I don't know where he came from, because when I looked at the other car and then turned my head north, he was right there. . . . Q. When you heard this motor, you stopped? A. When I heard the motor roar, I hesitated just enough to find out my position with reference to the car which I was approaching. Q. At that time, you were about how far from the Wilcox car? A. Well, just as an approximation, I would say about three feet."

The respondent testified that he was driving south, on Main street, in the traffic lane next to the parking lane. The night was dark and wet. As he crossed the intersection of west Twenty-fourth and Main, his car was moving at about eighteen to twenty miles an hour.

"Q. As you passed through the intersection, did you see the plaintiff, Mr. Bobst? A. Not as I passed through the intersection. Q. As you were traveling through the intersection, was there anyone in the cross-walk on the south side of the intersection? A. No, sir. Q. Where was Mr. Bobst when you first saw him? A. Mr. Bobst, to my judgment, was down about—well, it would be approximately twelve feet from the cross-walk. . . . Q. In which direction from the cross-walk? A. South. Q. Do you recall where Mr. Wilcox's car was parked there? A. Yes. Q. In which lane was it standing? A. It was standing in the parking lane. . . . Q. Was it in front of Ghormley's drug store, for instance? A. Yes. Q. Where was Mr. Bobst, as you recall, when you first saw him? A. Mr. Bobst was facing west in a bent over position, slightly bent over, the first time I

saw him. Q. Where, with regard to Mr. Wilcox's car? A. I would say it would be down about the left front fender, approximately in there. Q. How far were you from him when you first saw Mr. Bobst? A. Well, I was practically on top of him when I first saw him. Q. Did you see from whence he came? A. No, I didn't. . . . Q. When you first saw Mr. Bobst, what, if anything, did you do? A. I put on my brakes, the first thing. Q. Which part of your car came in contact with Mr. Bobst, as far as you can tell? A. The right front."

After the accident, respondent stopped and assisted appellant into his car and carried him to a hospital. He testified that, on the way, the appellant muttered, "Damned old fool." In answer to respondent's inquiry what he meant by that, the appellant answered, "Old man in parked car." Respondent further testified that, on the following day at the hospital, he had a conversation with the appellant.

"I asked him what happened, or where he came from, and he said that he had apparently stepped back into the line of my car, that there was a man pulling out from the curb, and that he had stepped back."

Frank Wilcox, the only eye witness other than the parties, called by appellant, testified that he parked his car at the corner in front of the drugstore. He went into the store to get a newspaper.

"Well, I came out of the store and went in front of my car, between that and another one just parked ahead of me, and walked around to the left-hand door. . . . Just as I passed in there, they started up and pulled out. . . . Q. When you were standing with your hand on the door and were up rather close to your car, when did you first see Mr. Bobst? A. Just when he hit. . . . Q. You were standing, facing to the north, and you saw him struck? A. No, I was facing practically to the east, east and north. . . ."

On cross-examination, he testified:

"Q. Did you look to the north at that time, when you walked around in front of your car? A. Just as you naturally walk around and walk up there. The traffic had started to come and I was watching that they did not come too close, because I was on the wrong side of the car to get in. Q. At that time, you did not see Mr. Bobst, or anything? A. I did not see him, no. . . . Q. Did you notice before he was struck that he was carrying anything in his hands? A. No, I didn't see him until he was struck. Q. I thought you said you saw him just the instant he was struck? A. I did. I suppose that was the time that the contact came, just when I saw him. . . . Q. You saw the eggs there afterwards, after Mr. Bobst and Mr. Hardisty had left. They were in the second lane, also, were they? A. Just about right on the line there. Q. Near the front end of your car? A. No, just in the middle of it; right opposite it there."

The witness Erickson, who visited the scene immediately after the accident, testified that the eggs were lying in the street, in line with the front of the Wilcox car and about four feet out from the car.

On the evidence, it is obvious that the case was one for the jury, not only on the issue of respondent's negligence, but as well on the issue of appellant's contributory negligence. The appellant's contention was that he was struck while proceeding westerly on the cross-walk. The respondent contended, on the other hand, that the appellant was several feet, perhaps the length of the Wilcox car, south of the cross-walk when struck. In other words, that appellant had been "jay-walking" across the street toward the entrance to the drugstore and, when he heard the movement of the second parked car, stepped in front of respondent's car.

The jury could have found, and evidently did, that the appellant was not struck while on the cross-walk,

but south of it, toward the front of the Wilcox car. The appellant's witness Wilcox testified that, when he walked around the front of his car and looked north toward oncoming traffic, he did not see the appellant. He could not have failed to see him if appellant had been on the cross-walk near the rear of the Wilcox car. The position of the eggs on the street would also warrant an inference by the jury that the appellant was struck at or near the front of the Wilcox car.

While the appellant makes no formal assignment of error based upon the denial of his motion for a new trial, he argues that the motion should have been granted because the jury returned its verdict after only fifteen minutes' deliberation. The appellant does not complain of the court's instructions or of any ruling on the admission or rejection of evidence.

The trial consumed two days in the reception of evidence and argument of counsel. If, at its close, the jurors were of the unanimous opinion, as they apparently were, that the appellant had failed to make a case, there was no reason why they should have prolonged their deliberations.

The judgment is affirmed.

BLAKE, C. J., BEALS, MAIN, and SIMPSON, JJ., concur.