[No. 32049.   Department One.   April 8, 1953.]

PRENTICE I. FRAZIER, *Appellant,* v. FREDERICK W. BOWMAR,
*Respondent.*[1]

*Charles M. Stokes* and *Monheimer, Schermer & Mifflin,*
for appellant.

*Skeel, McKelvy, Henke, Evenson & Uhlmann,* for respondent.

WEAVER, J.—Plaintiff is the owner of the Northwest Enterprise, a weekly newspaper published in Seattle. February 25, 1950, he employed defendant as advertising, circulation, and news manager. The written contract of employment covered the period of March 1, 1950, to February 28, 1951.

July 21, 1950, plaintiff discharged defendant. He commenced this action for damages, alleged to have been suffered by him, by reason of defendant's mismanagement of the newspaper. Defendant cross-complained (a) for $200 salary due him at the time of his discharge; and (b) for $9,600 damages suffered by reason of the breach of the contract.

[1]Reported in 255 P. (2d) 906.

Plaintiff appeals from a judgment dismissing his complaint and awarding defendant $3,500.

The trial court found that respondent properly and efficiently performed all duties required of him under the terms and provisions of the employment contract, and that no just cause existed warranting his discharge.

It would add nothing to the case authority of this jurisdiction to detail the testimony supporting these findings. After a review of the record, we cannot say that the evidence preponderates against them. The trial court did not err in dismissing appellant's complaint and in holding him liable in damages for the wrongful discharge of respondent.

Appellant's (plaintiff's) remaining assignments of error are directed to the findings of fact concerning the assessment of damages against appellant.

The contract of February 25, 1950, provided:

". . . Now then it is hereby

"AGREED that the first party [appellant] shall hire and the second party [respondent] shall work for the first party in the capacity of advertising manager, circulation manager, and news manager of the Northwest Enterprise for the period of ONE YEAR from March 1st, 1950 until February 28, 1951; it is mutually agreed and understood that the second party shall receive as salary 65% of the amount of Advertising, Circulating [*sic*], and news paid in and it is

"FURTHER AGREED that the second party shall receive as salary 25% of all renewals on advertising, circulation, and news; and it is

"AGREED that in the event that the above percentage shall not amount to $250 the first party guarantees to make up said difference. In other words it is understood and agreed that the first party guarantees the second party the sum of $3000 for the year's work. . . ."

Except for a provision requiring respondent to make an accounting on the first and fifteenth of each month (the evidence shows weekly reports and monthly summaries were furnished), that which is quoted sets forth everything in the written contract pertaining to finances. However, it appears that, subsequent to the written contract, appellant and respondent orally agreed that respondent would receive

sixty-five per cent of the income, regardless of whether it was new business or renewal business; and that respondent would pay from his salary, as defined in the contract, a twenty-five per cent commission on each sale made by an agent.

This is not an accounting action. The cross-complaint (with one exception) alleges damages caused by appellant's wrongful breach of the contract of employment. The exception is a claim for two hundred dollars wages due when respondent's employment was terminated. The evidence supporting the alleged claim is nebulous and inconclusive. It cannot be allowed.

The burden is upon respondent to prove, with reasonable certainty, his damages resulting from appellant's act. The proof must be sufficient to remove it from the realm of speculation, but it is not necessary that it be susceptible of exact calculation. *National School Studios v. Superior School Photo Service*, 40 Wn. (2d) 263, 242 P. (2d) 756; see 4 Restatement, Torts, § 912, comment (d).

The record discloses that respondent has met the burden of proof required. In entering judgment for $3,500, however, the trial court made certain miscalculations which require a modification of the amount.

There is sufficient testimony to support the conclusion that, had respondent been permitted to complete his contract, he would have continued to earn at least as much as he had earned in the past. His past earnings, therefore, become material, not as an accounting between the parties, but as a basis for determining his damages.

The trial court found that respondent's average earnings were in excess of five hundred dollars per month. The record shows this amount to be excessive for two reasons:

First, both the trial court and counsel for respondent used an incorrect total income for the newspaper for the months of March, April, May, and June, 1950. It appears from respondent's exhibit four (monthly summary accounts for these months), that the total income was $2,909.81. The totals used by respondent's counsel included the cash on hand at the beginning of each month.

Second, the trial court failed to take into consideration the fact that respondent had to pay, from his *gross salary*, a commission upon business acquired by agents. Respondent had paid the commissions prior to his discharge, and the evidence supports the conclusion that he would have been required to make the same payments had he been permitted to complete the term of his contract of employment.

Appellant's exhibits eight and nine list the accounts of seventy-two advertisers. These exhibits disclose that a commission of twenty-five per cent was chargeable to respondent, upon substantially fifty per cent of the dollar volume of the advertising, for the period covered by the exhibits.

Respondent was entitled to sixty-five per cent of the total income of the newspaper of $2,909.81, or $1,891.38 for the four-month period. Substantially half of the total income was produced by agents. Upon this, respondent was chargeable with a commission of twenty-five per cent, or $363.72, leaving him a net income for the four-month period of $1,527.66, or an average of $381.91 per month.

Seven and one quarter months of respondent's contract remained when it was canceled. He suffered damages, therefore, in the sum of $2,768.85. Judgment against appellant is reduced to this amount.

Appellant will recover costs on this appeal.

GRADY, C. J., MALLERY, SCHWELLENBACH, and DONWORTH, JJ., concur.