[No. 32309. *En Banc.* September 21, 1953.]

MARIE GILMARTIN *et al.*, *Appellants*, v. STEVENS INVESTMENT COMPANY, *Respondent.*[1]

[1]Reported in 261 P. (2d) 73.

*Arthur H. Hutchinson* and *Kenneth L. Johnson,* for appellant.

*Russell B. Johnson,* for respondent.

HAMLEY, J.—Did the trial court, after finding that plaintiffs had sustained substantial damage, err in allowing them nominal damages only, and in denying them a new trial on the question of damages?

On November 22, 1948, Marie Gilmartin and her husband, A. F. Gilmartin, purchased from Stevens Investment Co., Inc., a certain tract of land in Island county, state of Washington. Twenty months later, the Gilmartins brought this action against the vendor. They alleged that Stevens Investment Company had breached covenants of the real-estate

contract which obligated the vendor·to construct certain sewer facilities and deliver water to the premises for household and irrigation purposes. Plaintiffs prayed for specific performance and damages in the sum of ten thousand dollars. Other defendants named in the complaint may be disregarded, as their dismissal from the action is not here questioned.

The case was tried to the court sitting without a jury. The measure of damages established for the case, as suggested by defendant, acceded to by plaintiffs, and adopted by the court, was the difference in the market value of the property with the water plaintiffs were obtaining from defendant, and the market value of the property were they obtaining the water agreed to be furnished under the contract.

Gilmartin testified that the value of their property, if they obtained the water agreed to be furnished under the contract, would be $14,000. He gave the value with the water they were obtaining as $5,000. The testimony of Mrs. Gilmartin was the same.

R. T. Minnick, a real-estate man from Mukilteo, testified that in his opinion the market value of the property with adequate water supply would be $9,388. He then testified:

"Q. Assuming that the amount reasonable for household needs is ten gallons per minute, and the house only gets two to three gallons per minute, what would be the value of that house and lot?   . . .   A. I would say that that would depend upon the buyer, and the buyer's needs, the number in the buyer's family. I myself am not qualified to answer further than that, because it has never arisen in my experience before."

Horace Flynn, of Clinton, a builder experienced in real-estate values, who helped Mr. Gilmartin finish the house, valued the property with adequate water supply at $13,000. He was then asked what it was worth with the present water supply, and replied: "That's a hard answer to make. Oh, fifty-five hundred." Under cross-examination, he was asked:

"Q. Was that figure you just stated, Mr. Flynn, more or

less of a guess? A. No, not necessarily, no. That is my opinion."

R. A. Luhn, a real-estate man from Langley, testifying for respondent, gave the value of the house with *average* water supply at between $6,000 and $6,500. He was not asked, by either counsel, the value with the present water supply.

For convenience, we shall recapitulate the testimony of the witnesses with regard to value.

|  | With Adequate Water Supply | Without Adequate Water Supply |
|---|---|---|
| Mr. Gilmartin | $14,000 | $5,000 |
| Mrs. Gilmartin | 14,000 | 5,000 |
| R. T. Minnick | 9,388 | ..... |
| Horace Flynn | 13,000 | 5,500 |
| R. A. Luhn | 6,000 or $6,500 | ..... |

It should be noted that Mr. Luhn's testimony was with regard to *average* rather than *adequate* water supply.

At the close of the trial on March 25, 1952, the court orally ruled that defendant had fulfilled its obligation as to construction of sewer facilities. As to the asserted obligation to supply water, the court held that defendant had covenanted to supply a reasonably adequate quantity of water for household uses. The court further stated that this obligation had not been fulfilled "even to the extent of not having enough to enable the wife to swallow a pill."

The trial court held that specific performance would not be a practicable remedy in a case of this kind. Regarding the allowance of damages, the court orally ruled as follows:

"I would conclude that plaintiffs have known some substantial damage, arising from the failure of the defendant to perform. I am quite at a loss to find in testimony and evidence that I am willing to accept, what is to be said to be the extent or amount of damage, as naturally and reasonably to have been anticipated to follow the failure of defendant to afford water as I have indicated it was obligated to do for household uses.

"I am not ready to accept the testimony of the two plaintiffs as indicative of what would be the actual depreciated value of their property—the difference between what it is worth as it actually is and as water is provided for it for its

use, and what it would be if water were thus provided. The testimony of realtors does not afford me any guidance. As I view their testimony, this is an unusual case. . . .

"These realtors who testified apparently face the same difficulty that confronts me, and they were not willing even to venture an opinion as to what would be the value of this property as water supply is. They had opinion, which I assume was honest, as to what the value of the property would be, if water supply were adequate for household uses, at least. And at this time I see no other possible disposition for me to make of this case than that these plaintiffs shall know recovery of nominal sum, in the absence of proof that is substantial and to be accepted as to actual damage.

"I assume 'nominal damages' is a sum anywhere from $1.00 to $100.00, perhaps. I fix it at $25.00."

Counsel for plaintiffs immediately argued against the allowance of nominal damages only, but the court adhered to its announced view.

When findings of fact and conclusions of law were thereafter presented to the court on May 8, 1952, the question of whether plaintiffs should be restricted to nominal damages was reargued. The court again adhered to its oral decision, and the findings of fact entered on that day include the following paragraphs:

Finding No. VII: ". . . That the water facilities installed have not delivered to the residence of the plaintiffs constructed upon the land described in the contract sufficient water for domestic uses, and as a proximate result, the plaintiffs have suffered some substantial damage."

Finding No. IX: "That the amount of the damage sustained by the plaintiffs through the failure of the defendant to supply sufficient water, as naturally and reasonably to. have been anticipated by the parties, is incapable of determination under the evidence presented in the trial of this cause. The Court is not willing to accept the testimony of the parties plaintiff or other witnesses as to the amount of depreciation in the value of the property occasioned by the defendant's failure to perform its undertaking."

Finding No. XI: "In the absence of satisfactory proof of the actual damage sustained by plaintiffs, they are entitled to nominal damages in the amount of $25.00 and taxable costs."

On June 5, 1952, the question was argued for a third time in connection with plaintiffs' motion for a new trial. The court held to its previously-announced view and denied the motion. The judgment, entered that day, awarded plaintiffs twenty-five dollars. They appeal.

■ In *Bellingham Bay & British Columbia R. Co. v. Strand*, 4 Wash. 311, 314, 30 Pac. 144, we defined the term "nominal damages" as follows:

"Nominal damages never purport to be real damages. They are awarded where, from the nature of the case, some injury has been done, the amount of which the proofs fail entirely to show."

The same general definition, though somewhat amplified, is to be found in 1 Restatement of Contracts, 502, § 328; 1 Sutherland Damages (4th ed.) 31, § 9; New York Law of Damages 228, § 128; Mayne on Damages (11th ed.) 2; McCormick on Damages 85, 91, §§ 20, 23.

The core of respondent's argument is that damages must be proved with reasonable certainty, and that this court should not overturn the trial court's "finding" that appellants failed to meet that standard of proof.

■ What is "reasonable" certainty depends largely on the extent to which the particular damage in issue is susceptible of accurate proof. Where, for example, a plaintiff, in attempting to prove loss of profits, fails to produce available records relevant to that question, he fails to meet this standard of reasonable certainty. *National School Studios v. Superior School Photo Service*, 40 Wn. (2d) 263, 242 P. (2d) 756. On the other hand, the precise amount of damages need not be shown where the circumstances do not permit of careful measurement. *Ball v. Stokely Foods*, 37 Wn. (2d) 79, 221 P. (2d) 832. See, also, *Jones v. Shell Oil Co.*, 164 Wash. 543, 3 P. (2d) 141.

The agreed measure of damages in the instant case—difference in the market value of the tract with and without the promised water—is obviously not susceptible of exacting proof. It can be proved only by opinion testimony as to values, given by witnesses competent to express an opinion on the subject.

It should further be observed that the standard of "reasonable certainty" is concerned more with the *fact* of damage than with the *extent* or amount of damage. *Larson v. Union Inv. & Loan Co.*, 168 Wash. 5, 10 P. (2d) 557; *Dunseath v. Hallauer*, 41 Wn. (2d) 895, 253 P. (2d) 408; *Gaasland Co. v. Hyak Lumber & Millwork*, 42 Wn. (2d) 705, 257 P. (2d) 784; 1 Restatement of Contracts 515, § 331, comments b to d; 78 A. L. R. 858, annotation.

The case before us does not involve any question as to the fact of damage, but only as to its amount.

But there is also a serious question as to whether the standard of reasonable certainty has any application in a case of this kind. This standard is usually applied only in cases where the measure of damages is the amount of profits or losses. It is chiefly in this kind of case that the rule has been announced by this court. See *Federal Iron & Brass Bed Co. v. Hock*, 42 Wash. 668, 85 Pac. 418; *Belch v. Big Store Co.*, 46 Wash. 1, 89 Pac. 174; *Sedro Veneer Co. v. Kwapil*, 62 Wash. 385, 113 Pac. 1100; *Cuschner v. Pittsburgh-Hickson Co.*, 91 Wash. 371, 157 Pac. 879; *National School Studios v. Superior School Photo Service, supra*; *Frazier v. Bowmar*, 42 Wn. (2d) 383, 255 P. (2d) 906; *Gaasland Co. v. Hyak Lumber & Millwork, supra*.

It will be noted that in Restatement of Contracts, the rule of reasonable certainty is discussed only in connection with the establishment of profits or losses. See 1 Restatement of Contracts 515, § 331. Williston similarly limits the discussion of the rule. See 5 Williston on Contracts (rev. ed.) 3776, § 1345. This limited application of the "reasonable certainty" standard is pointed out in McCormick on Damages 105, § 28, as follows:

"Like the 'contemplation of the parties' doctrine, the standard of 'certainty' was developed, and has been used, chiefly as a convenient means for keeping within the bounds of reasonable expectation the risk which litigation imposes upon commercial enterprise. Even to-day, while the discussions in the opinions often assume that the standard of certainty of proof applies to the proof of damages generally, and occasionally the standard is actually used to test the sufficiency of proof of claims for direct physical loss or in-

jury to property or to claims for future consequences of personal injury, yet the principal field of its use remains the field of loss of commercial profits. Such lost profits, or gains prevented, must be claimed specifically in the pleadings, as 'special' damages, and thus are distinguished from claims based upon some normal or usual standard, such as the value of the property in cases of conversion, or loss of time for personal injury. As to these, called 'general' damages, the use of the orthodox measure of recovery is assumed to be a sufficient safeguard against unlicensed 'guessing' by the jury."

In the instant case, therefore, the real question is not as to the "certainty" of the proof. As demonstrated by the above tabulation of dollar figures which were submitted, the evidence was as *certain* as could be expected of opinion testimony pertinent to land values. The trial court, however, thought that this opinion evidence represented an exaggerated view of the true market value and the depreciation thereof. Since no dollar figures were submitted which came within a range which it deemed acceptable, the court simply declined to make any award of substantial damages.

The basic question before us, then, is whether the trial court, upon exercising its undoubted right to reject the dollar figures submitted in connection with this opinion evidence, was, under the circumstances of this case, thereby relieved of the duty to make a substantial award of damages.

Appellants submitted the opinion testimony of three witnesses as to the market value of the tract in question, both with and without the contemplated water supply. They also submitted the testimony of a fourth witness as to the market value with the contemplated supply. This testimony was relevant in view of the agreed measure of damages. It was undisputed.

The trial court did not question the veracity of these witnesses. Nor did it question their competency to express an opinion as to the values in issue. Objections as to each of these witnesses, made on the ground that they were not qualified to express an opinion on the subject, were made

and overruled. The trial court gave no intimation, during the trial, that their testimony was not credible.

The minimum damage figure which may be derived from appellants' uncontradicted competent evidence as to value in this case is $3,888. This figure represents the difference between R. T. Minnick's estimate as to value with an adequate water supply, and Horace Flynn's estimate as to value with an inadequate supply.

However, there was also a great deal of other evidence which the trial court was entitled to take into consideration. There was testimony describing the premises and the uses to which they were and could be put; testimony telling of the water which was available and the water which should have been made available; and testimony expressing the opinion of various witnesses as to the hampering effect of the inadequate supply of water.

On the basis of such evidence, the trial court, if so disposed, would have been fully warranted in fixing the award at an amount substantially below the minimum figure to which reference has been made. Had this been done, respondent would have had no justifiable complaint, since the evidence would sustain an even larger award. *Lagomarsino v. Pacific Alaska Nav. Co.*, 100 Wash. 105, 170 Pac. 368; *Ball v. Stokely Foods*, 37 Wn. (2d) 79, 221 P. (2d) 832. Furthermore, in view of the other general evidence, in addition to the opinion testimony as to value, a trial court finding that there was no substantial damage, had such a finding been entered, would probably not have been disturbed by this court.

In view of what has just been said, it should be clear that we do not here hold that the trial court was obliged to accept the testimony of any witness.

We do hold, however, that, since competent and undisputed opinion evidence was submitted as to the values comprising the agreed measure of damages, and the court did find that substantial damage had been sustained, the court had the duty either to make an award of substantial damages or to give appellants an opportunity to submit ad-

ditional proof as to damages. Had the latter course been followed, the court was entitled, but not required, to appoint an appraiser or other expert to present additional testimony as to value. *Ramsey v. Mading*, 36 Wn. (2d) 303, 217 P. (2d) 1041.

Were we to sanction the disposition which the trial court made of this case, the injustice it would work upon appellants is obvious. It would mean that they must be content with an award of nominal damages only—not because they had failed to produce competent evidence of substantial damage, but because the testimony which they did produce tended to substantiate a damage figure which went beyond the range of substantial damage which the trial court apparently had in mind. We do not believe that a plaintiff's right to substantial damages is dependent upon a lucky coincidence between the dollar values submitted from the witness stand and the trial court's undisclosed conception of a proper award.

Had this case been tried to a jury, appellants would have been entitled to a substantial award based upon the jury's estimate. *Calkins v. F. W. Woolworth Co.*, 27 F. (2d) 314, certiorari denied 278 U. S. 645, 73 L. Ed. 558, 49 S. Ct. 80; *Pye v. Eagle Lake Lbr. Co.*, 66 Cal. App. 584, 227 Pac. 193. If a jury had answered a special interrogatory to the effect that appellants had suffered substantial damage, but had brought in a general verdict allowing nominal damages, the trial court or this court would have ordered the case retried. See *Great Western Land & Imp. Co. v. Sandygren*, 141 Wash. 451, 252 Pac. 123.

Yet that is, in effect, what happened in this case. The trial court made a finding that there was substantial damage. Findings of fact have the effect of a special verdict. *State v. Twenty Barrels of Whiskey*, 104 Wash. 382, 176 Pac. 673. It is the general rule that a special verdict controls a general one. *Gerhard v. Worrell*, 20 Wash. 492, 55 Pac. 625. But here the general verdict—the award of nominal damages—is inconsistent with that finding of fact. This violates the principle that the judgment must accord with the find-

ings. *State v. Twenty Barrels of Whiskey, supra; Great Western Land & Imp. Co. v. Sandygren, supra.*

Respondent, on oral argument before this court, suggested that we should not consider the question which has been discussed because appellants did not move to re-open the case for additional evidence as to damages. While that would have been proper procedure, we do not regard it as a condition precedent to an appeal, under the circumstances of this case. Appellants moved for a new trial, and the question we are discussing was argued before the trial court on three different occasions.

There is some suggestion that the denial of the motion for a new trial has not been assigned as error.

Assignment of error No. 4 reads as follows:

"The Court was in error when he denied awarding the plaintiff substantial damages but in place thereof awarded nominal damages of $25.00 when the Court denied plaintiff's motion for a new trial, St. of F., Page 322, Line 11 to Page 329, Line 19."

Assignments of error are required, under Rule on Appeal 43, 34A Wn. (2d) 47, as amended effective January 2, 1953, 34A Wn. (2d) (Sup.), 3. The purpose of the rule is so that an inspection of the brief alone will fully disclose the errors relied upon. See *Chandler v. Cushing-Young Shingle Co.,* 13 Wash. 89, 42 Pac. 548; *Ranahan v. Gibbons,* 23 Wash. 255, 62 Pac. 773; *State ex rel. Powell v. Fassett,* 69 Wash. 555, 125 Pac. 963; *State ex rel. Rand v. Seattle,* 13 Wn. (2d) 107, 124 P. (2d) 207; *In re Whittier's Estate,* 26 Wn. (2d) 833, 176 P. (2d) 281. Substantial compliance with the rule is all that is required. *Bobst v. Hardisty,* 199 Wash. 304, 91 P. (2d) 567.

We believe that the quoted assignment of error, though not artfully drawn, is sufficient to disclose to us that appellants challenge the trial court's action in denying the motion for new trial.

The judgment is set aside, and the cause is remanded with directions to grant appellants a new trial on the question of damages by reason of respondent's breach of contract in

failing to provide a reasonably adequate supply of water for household purposes.

GRADY, C. J., HILL, and FINLEY, JJ., concur.

WEAVER, J., concurs in the result.

SCHWELLENBACH, J. (dissenting)—The real issue in this appeal is whether or not we are willing to abandon the long recognized practice of permitting a trial to proceed under rules which, throughout the years, have been recognized as being the best method of administering justice between individual litigants.

As I interpret the majority opinion, it says that the trial court is not obliged to accept the testimony of any witness— But— if we are not satisfied with his decision, we will require him to make an award of substantial damages or to give appellants an opportunity to submit additional proof as to damages. The majority also suggests that the court might appoint an appraiser or other expert to present additional testimony as to value. This is quite a departure from the recent case of *Mills v. Meyer*, 40 Wn. (2d) 369, 243 P. (2d) 491, wherein we said:

"A mere failure of proof is not a ground upon which a new trial can be granted. Appellant has not established any other ground upon which he can or should be granted a second opportunity to submit proof of his damages."

Our sole province as an appellate court is to review the work of the trial judge. If we are satisfied, from the record, that the evidence clearly preponderates against his findings, or that he has committed some prejudicial error, or has abused the discretion placed in him, it is our duty to reverse. But we have no right to tell him how to conduct his trials. We have no right to send the case back to him because we feel that justice has not been done, and tell him to try it again.

I have been trying to visualize the effect of the majority opinion. It will do away with adversary trials. The judge will become a benevolent despot. It will place the burden of proving the elements of a lawsuit on the trial judge,

rather than on counsel. He, the judge, must not sustain a challenge to the sufficiency of the evidence. If he does not believe the testimony, or if he feels that his decision might shock our sense of justice, he must tell counsel to go out and get more testimony. Or perhaps he should appoint an appraiser or other expert to investigate and obtain such testimony.

We have always been hesitant in overthrowing the findings of a jury—its members being the triers of facts. We should be more hesitant in overthrowing the findings of a trial judge.

I cannot agree with the majority's interpretation of assignment of error No. 4:

"The Court was in error when he denied awarding the plaintiff substantial damages but in place thereof awarded nominal damages of $25.00 when the Court denied plaintiff's motion for a new trial, St. of F. Page 322, Line 11 to Page 329, Line 19."

The majority states that the quoted assignment of error discloses to us that appellants challenge the trial court's action in denying the motion for new trial. I do not believe that we should be too technical in interpreting our rules. However, I do not believe we should permit our zeal to do justice to read something into an assignment of error which obviously is not there. Assignment No. 4 merely charges error in denying plaintiff substantial damages, but in place thereof awarding nominal damages. The denial of plaintiff's motion for new trial is not assigned as error.

There is a clear distinction in the meaning of the terms "damage" and "damages." "Damage" is defined in Black's Law Dictionary as "Loss, injury or deterioration, caused by the negligence, design, or accident of one person to another, in respect of the latter's person or property. The word is to be distinguished from its plural—'damages', which means a compensation in money for loss or. damage." The term "damages" is defined in Black's Law Dictionary as, "A pecuniary compensation or indemnity, which may be recovered in the courts by any person who has suffered loss, detriment, or injury, whether to his person, property, or

rights, through the unlawful act or omission or negligence of another."

Thus, it will be seen that "damage" is legal injury, and that "damages" is the *pecuniary compensation* for such legal injury.

The trial court used the words, "plaintiffs have known some substantial damage." Those words, as used by the trial court, do not mean that the plaintiffs have been damaged *in a substantial amount*, but merely that they have been substantially damaged *in fact*.

The rule for the degree of proof required to prove damages is found in 25 C. J. S. 816, Damages, § 162, (2):

"Damages cannot be allowed where not supported by the required degree of proof, nor can a substantial recovery be based on anything except evidence which justifies an inference that the damages awarded are just and reasonable. Damages must be proved with all the certainty the case permits and cannot be left to conjecture, guess, or speculation. As a general rule, the evidence should be such as to enable the court or jury to determine the injury and the amount of damages with reasonable certainty or accuracy; and it is sufficient if they are so established. Proof of the amount of loss with absolute or mathematical certainty is not required, and it does not matter that the determination of damages depends to some extent on the consideration of contingent events. So, it has been held sufficient if a reasonable basis of computation is afforded, even though the result may be only approximate, or to adduce evidence which is the best the case is susceptible of under the circumstances and which will permit a reasonably close estimate of the loss. Where damages are susceptible of definite or precise proof, or of estimation by those having knowledge, or are capable of proof with certainty, such proof must be adduced."

Had the trial court found, from the evidence, an amount of damages, we would not have reversed him unless we had been convinced that his decision was based upon speculation or conjecture. *Bogart v. Pitchless Lbr. Co.*, 72 Wash. 417, 130 Pac. 490. However, we cannot force a trial judge to believe a witness appearing before him, nor can we force him to accept the testimony of any witness if he does not

believe such witness qualified. We said, in *Bogart v. Pitchless Lbr. Co., supra*:

"Whether a witness is competent to express an opinion depends largely upon the discretion and sound judgment of the trial judge."

We cannot say, from the evidence, that the trial court abused its discretion in this regard. It may very well be that some of us, had we been trying this case, would have found some amount of damages from the evidence presented. But we are not permitted to substitute our judgment for that of the trial court.

Here we have a decision by a trial judge who had about forty years experience on the bench. He presided over the trial fairly, patiently, and competently. There were no errors committed throughout the trial. At its close, he was faced with this dilemma. He did not believe the testimony of witnesses, which resulted in his inability to find an amount of damages. He was not required to believe the witnesses. We have no right to force him to do so. He was not required (until now) to tell counsel to get additional testimony, or, on his own motion, to appoint appraisers or experts to obtain and bring in additional testimony. His duties as trial judge were completed. He did the only thing he could have done under the circumstances. He allowed nominal damages.

The judgment should be affirmed.

MALLERY, J., concurs with SCHWELLENBACH, J.

OLSON, J. (dissenting)—I agree with Judge Schwellenbach, and also dissent for additional reasons.

Trial judges should assign forthright reasons for their decisions. If they do not find any witness credible, they should say so. To state the actual reason why a case fails, is more proper than to hope to obtain an affirmance by the statement of some other reason. It is regrettable that the consequences of the former course may be adverse to a litigant, as is shown in this case by the suggestion of the majority that,

". . . in view of the other general evidence, in addi-

tion to the opinion testimony as to value, a trial court finding that there was no substantial damage, had such a finding been entered, would probably not have been disturbed by this court."

Further, the majority state that a minimum dollar amount of damages is disclosed by the evidence. But, they say, if the court had wished to award a dollar amount less than this lowest range of the proof, it could have done so. However, they do not show what evidence there is in the record that would sustain such a lesser award or its amount. How low could the award have been? The experts who testified upon value could do no more than give a dollar value, and, if the court were to disregard either the upper or lower range of this testimony, it would seem that it would be disregarding the testimony entirely and entering the realm of speculation. Clearly, in that event, defendant would have a reason to complain.

If the trial judge did not believe the witnesses (and the majority concede he was not obliged to do so), his failure to guess at an amount approximating the incredible testimony should not be error. In this sense, there can be no degree of credibility. The trier of the facts, after observing a witness, cannot say that he is partially honest and, by any standard yet discovered, discount an amount to which he testifies to allow for a percentage of credibility. Evidence from an incredible source has no probative value.

This is not the first, nor will it be the last, case which has turned upon the difficult question faced by every trier of the facts—what testimony is worthy of belief? What will the trial judge do when, under the obligation placed upon him by the majority, he has aided the plaintiff to bring evidence which he believes and finds sufficient? If he is to be fair, he should give similar assistance to the defendant. Somewhere in the process he must escape his dilemma and disbelieve somebody. Whether he produces the witnesses (a function which he never should be obliged to perform) or whether counsel bring them, the trier of the facts cannot escape the task of resolving, in each case, where the credible evidence is.

Many cases fail for the lack of credible evidence. Often such evidence is not available. In any event, a party should expect but one hearing on any issue. It is presumed that he will bring to this one hearing the best evidence he can obtain to support his case. When he rests, he, his opponent, and the court should expect, in fact, should rely upon the proposition that he has done his best. If a party fails at one hearing, can it always be said that he can do better a second time? Even if he can, that fact of itself is no reason to give him the unfair advantage which he must obtain from the opportunity.

Because of the comment upon the subject in the majority opinion, an inference may appear that the trial judge was obliged to intimate his view upon the credibility of the experts before the trial was concluded. It certainly cannot be intended that the testimony of each witness must be weighed, and accepted or rejected by a ruling or statement regarding his credibility or veracity, when his testimony is completed. Corroboration of any witness, including experts, is always a possibility until both sides have rested. It would seem that the court's mind should be open until that time.

Also, it seems irrelevant that the court ruled that the experts were qualified to express an opinion. The majority agree that their qualification or competency and their credibility are not interdependent, when they say the court was not obliged to accept the testimony of any of them.

It is not clear upon what authority the judgment is set aside. There is no petition for its vacation or modification. In fact, none of the statutory grounds for such relief exist in this case. RCW 4.32.240, 4.72.010 *et seq.* [*cf.* Rem. Rev. Stat., §§ 303, 464 *et seq.*]; Rule of Pleading, Practice and Procedure 13, 34A Wn. (2d) 77. In any event, such action is not within the powers conferred upon this court on appeal, by statute or rule. RCW 4.88.190 [*cf.* Rem. Rev. Stat., § 1737]; Rule on Appeal 16, 34A Wn. (2d) 23. Also, the grounds selected by the majority for granting a new trial in this case are not clear, unless it be the failure of plaintiffs' proof. None other appears, and this ground is not found in any precedent or statute.

There was no motion by the plaintiffs to reopen their case. Of course, such a motion is not a condition precedent to an appeal, but, in this case, it should be such a condition to a successful appeal. It might have made the result of the majority opinion possible, upon the theory that the court abused its discretion in not granting that motion. The novel implication of the opinion is that the court should have made the motion for plaintiffs, just as it is implied that it should have developed their case for them. But this is not a judge's work. His function is to decide, and it cannot be preserved if we expect or require him to consult, recommend, and act for counsel or approve his doing so. This is a judicial proceeding, not an investigation.

The judgment should be affirmed.

DONWORTH, J., concurs with OLSON, J.

### ON REHEARING.

[*En Banc.* February 15, 1954.]

PER CURIAM.—Upon a rehearing *En Banc*, a majority of the court adheres to the opinion heretofore filed herein.